# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

FILED

Mar 07 2013, 9:02 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH MATHENY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1207-CR-347 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
Cause No. 49F09-1203-FD-19814

**March 7, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Joseph Matheny appeals his conviction for class D felony auto theft. When Matheny was being arrested, a police officer asked him where he lived, and Matheny told the officer. At trial, Matheny's response was used as evidence against him because his residence was close to the location from which the car was stolen. On appeal, he argues that his statement was obtained in violation of his constitutional privilege against self-incrimination and that the trial court abused its discretion in admitting it. He also argues that the trial court abused its discretion in refusing his tendered jury instructions regarding the presumption of innocence. We conclude that the police officer did not violate Matheny's constitutional rights by asking him for his address, and therefore the trial court did not err in admitting his statement at trial. We further conclude that although the trial court erred in refusing one of Matheny's tendered jury instructions, the error was harmless. Therefore, we affirm.

**Facts and Procedural History**

On March 23, 2012, at approximately 6:20 p.m., Pamela Dedinsky parked her red 2004 Honda Accord near the intersection of Delaware and Ohio Streets in Indianapolis. At about 9:30 p.m., after dining at a restaurant, Dedinsky returned to the parking space and found that her car was gone. She went back to the restaurant and called the police to report that her car was missing. Earlier that day, Dedinsky had given her daughter permission to drive the car using a spare set of keys. This set of keys was later determined to be missing. Dedinsky did not know Matheny.

2

On March 24, 2012, at approximately 2:20 a.m., Indianapolis Police Officer Brad Alford was on patrol near 38th Street and Audubon Road and noticed a car, later identified as Dedinsky's Accord, with heavy front-end damage in a ditch with its lights on and a gray van backed up to it. As he drove by, Officer Alford saw a man, later identified as Matheny, sitting in the driver's seat of the car with the door open. Officer Alford returned to the Accord because he believed that its condition indicated a property damage accident. Officer Alford shined a spotlight on the Accord and saw Matheny exit the car. Officer Alford walked toward the vehicles. He noticed that Matheny was wobbling and intoxicated. Matheny had a smell of alcohol on his breath, slurred speech, and watery eyes. Matheny also had a laceration above his right eyebrow with blood trickling down. Officer Alford asked Matheny what had happened, and Matheny said that "a friend from 30th and Emerson" had offered him $20 to get the Accord out of the ditch. Tr. at 214. Matheny later stated that he had been a passenger in the Accord after a friend "picked him up at 38th Street and Emerson and they were riding around." *Id*. at 237.

Officer Marc Klonne arrived at the scene as backup. The officers observed that the van was undamaged and was tied to the Accord in order to tow it. For safety reasons, the officers asked the van driver to remove the tow rope from the Accord and called for a tow truck. Because the van driver had been acting as a "Good Samaritan" and had not been involved in an accident with the Accord, the officers told the van driver that he could leave. *Id*. at 242.

Officer Klonne relayed the Accord's license plate number to dispatch and was informed that the Accord had been reported stolen. Officers Alford and Klonne then approached Matheny, who was standing by the Accord. Officer Alford saw Matheny take a step back, move his right hand behind his right leg, and drop something on the ground. Officer Alford shined his flashlight on the ground and saw a car key inscribed with an "H" logo. When the Accord was later towed, the tow truck driver inserted this key into the ignition and turned it to shift gear.[1] The officers handcuffed Matheny. They asked Matheny to identify himself, but he refused. During the patdown safety search for weapons, Officer Klonne felt a wallet in Matheny's pocket. Because they had been unable to identify Matheny, Officer Klonne removed an Indiana identification card ("ID") from the wallet. Joseph Matheny was the name on the ID card. To confirm whether the ID was in fact Matheny's, Officer Klonne asked Matheny for his address, and Matheny did not answer. Officer Klonne also asked Matheny several times if he lived at the address on the ID. Finally, Matheny said that he did not live at the address on the ID and that he lived at Wheeler Mission.

As Officer Alford was handcuffing Matheny, Officer Kari Pennington arrived at the scene. She also saw the car key on the ground below Matheny's hand. She read Matheny his *Miranda* rights. Officer Klonne called the medics and performed an initial sweep of the vehicle, observing everything in plain view. He saw that the driver's side airbag had

---

[1] The State asserts that this key was "used to start the car when it was towed away." Appellee's Br. at 4 n.2 (citing Tr. at 272-73, 278). Our review of the transcript reveals that Officer Klonne testified that he did not remember whether the car actually started and that he did not put the key in the ignition or try to turn it. Tr. at 272, 278.

4

deployed. The passenger's side airbag was not deployed, and there were items on the passenger seat.

On March 26, 2012, the State charged Matheny with class D felony auto theft and class B misdemeanor public intoxication. On April 12, 2012, Matheny filed a motion to suppress evidence. Following the hearing, the trial court concluded that Matheny had been too intoxicated to knowingly and voluntarily waive his *Miranda* rights and therefore suppressed all Matheny's statements made after he was taken into custody, except for those concerning his identifying information. *Id*. at 68.

At trial, Matheny objected to the admission of his statement that he lived at Wheeler Mission. Officer Klonne testified that his reason for asking Matheny to state his address was to verify the information on the ID. The trial court concluded that "routine questions for the purposes of identification, such as name, address, height, weight are not within the purview of *Miranda*," overruled Matheny's objection, and admitted the statement. *Id*. at 263. Officer Klonne testified that Wheeler Mission was located at 248 North Delaware Street, which is close to where Dedinsky's car was parked.

The jury found Matheny guilty as charged. Matheny appeals his conviction for auto theft. Additional facts will be provided as necessary.

**Discussion and Decision**

*I. Admissibility of Matheny's Statement*

Matheny argues that the trial court abused its discretion in admitting his statement to police that he lived at Wheeler Mission. "The admissibility of evidence is within the sound

5

discretion of the trial court and will not be disturbed absent a showing that the trial court abused its discretion." *Furnish v. State*, 779 N.E.2d 576, 578 (Ind. Ct. App. 2002) *trans. denied* (2003) (citation and quotation marks omitted). "An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court." *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (citation omitted). "In determining whether the trial court abused its discretion, we do not reweigh evidence and consider conflicting evidence in a light most favorable to the trial court's ruling." *Mogg v. State*, 918 N.E.2d 750, 755 (Ind. Ct. App. 2009). We may affirm the trial court's ruling if it is sustainable on any legal basis supported by the record. *Scott v. State*, 883 N.E.2d 147, 152 (Ind. Ct. App. 2008).

Matheny contends that his statement that he lived at Wheeler Mission was obtained in violation of the Fifth Amendment to the United States Constitution, which provides that no person "shall be compelled in any criminal case to be a witness against himself." "At its core, the [Fifth Amendment] privilege reflects our fierce 'unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt.'" *Pennsylvania v. Muniz*, 496 U.S. 582, 596 (1990) (quoting *Doe v. United States*, 487 U.S. 201, 212 (1988)). The "privilege against self-incrimination protects individuals not only from the legal compulsion to testify in a criminal courtroom, but also from the informal compulsion exerted by law-enforcement officers during in-custody questioning." *Id*. at 589.

Thus, when a person is in custody[2] and is subject to interrogation, "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966); *see also Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)[3] ("[T]he special procedural safeguards outlined in *Miranda* are *not* required where a suspect is simply taken into custody, but rather where a subject in custody is subjected to interrogation.") (emphasis added). The safeguards outlined in *Miranda* also apply to the functional equivalent of interrogation by the police. *Innis*, 446 U.S. at 301-02. "That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301 (footnotes omitted). Verbal statements that are both "testimonial" in nature and elicited during custodial interrogation are protected. *Muniz*, 496 U.S. at 590. "Whenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the 'trilemma' of truth, falsity, or silence, and hence the response (whether based on truth or falsity) contains a testimonial component." *Id*. at 596-97 (footnote omitted). In sum,

---

[2] "In determining whether a person was in custody or deprived of freedom such that *Miranda* warnings are required, 'the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest,'" based on "whether a reasonable person in similar circumstances would believe he is not free to leave." *State v. Hicks*, 882 N.E.2d 238, 241 (Ind. Ct. App. 2008) (quoting *Luna v. State*, 788 N.E.2d 832, 833 (Ind. 2003)). Here, the parties do not dispute that Matheny was in custody for purposes of *Miranda* when the police asked him questions regarding his address.

[3] "'*Miranda* requires defendants to be adequately informed of their right to remain silent, that their statements could be used against them at trial, of their right to an attorney, and that the state will appoint an attorney for the defendant if he cannot afford one.'" *Furnish*, 779 N.E.2d at 578 (quoting *Allen v. State*, 686 N.E.2d 760, 769 (Ind. 1997)).

7

"[s]tatements that are the product of custodial interrogation prior to the advisement of the Fifth Amendment guarantee against self-incrimination are generally inadmissible." *Bailey v. State,* 763 N.E.2d 998, 1001 (Ind. 2002) (citing *Miranda*, 384 U.S. at 444).

Nevertheless, there are some police questions which do not fall within *Miranda*'s purview. Questions regarding "name, address, height, weight, eye color, date of birth, and current age" are outside the scope of *Miranda*'s coverage. *Muniz*, 496 U.S. at 601 (citations and quotation marks omitted);[4] *Loving v. State*, 647 N.E.2d 1123, 1126 (Ind. 1995) (where police handcuffed defendant and took him to police station for questioning as witness to fatal shooting, police questions regarding defendant's name, current address, date of birth, and social security number did not require *Miranda* warnings); *Hatcher v. State*, 274 Ind. 230, 232-33, 410 N.E.2d 1187, 1189 (1980) ("An officer may ask routine questions for the purpose of obtaining basic identifying information without giving *Miranda* warnings."); *Castillo-Aguilar v. State*, 962 N.E.2d 667, 671 (Ind. Ct. App. 2012) ("'Limited and focused inquiries on the part of police normally attendant to arrest and custody do not constitute custodial interrogation.'") (quoting *Curry v. State*, 643 N.E.2d 963, 977 (Ind. Ct. App. 1994), *trans. denied*), *trans. denied*.

Matheny contends that the "manner in which Officer Klonne elicited the statement from [him] that he lived at Wheeler Mission shows that the inquiry was not made for record-

---

[4] These questions are exempt either because they "fall within a routine booking question exception which exempts from *Miranda*'s coverage questions to secure the biographical data necessary to complete booking or pretrial services" or because they are considered not "testimonial." *Muniz*, 496 U.S. at 601 (Brennan. J., joined by O'Connor, Scalia, and Kennedy, JJ.); *id.* at 608 (Rehnquist, C.J., joined by White, Blackmun, and Stevens, JJ.). *See Loving v. State*, 647 N.E.2d 1123, 1126 n.2 (Ind. 1995) (noting the U.S. Supreme Court's divide regarding rationale for excluding identification questions from *Miranda*'s coverage).

8

keeping purposes or as part of the booking process following arrest," and "the statement was testimonial as the fact Mr. Matheny lived at Wheeler Mission was an important piece of evidence in the State's case against [him]." Appellant's Br. at 4. Here, Officer Klonne testified that his reason for asking Matheny to state his address was to verify the information on the ID. The fact that Officer Klonne asked Matheny his address more than once does not persuade us that the questions were anything other than the officer's attempt to obtain accurate identifying information. As such, the officer's questions were outside the scope of *Miranda*. *See Muniz*, 496 U.S. at 601; *but cf. Castillo-Aguilar*, 962 N.E.2d at 671 (concluding that the information sheet defendant was asked to complete at police station after being arrested for driving without a license constituted interrogation because it included questions such as how long defendant had lived in Goshen and name of his car insurance company). The fact that Matheny's residence was ultimately incriminating does not retroactively transform Officer's Klonne routine identification questions into interrogation for purposes of *Miranda*.[5] Accordingly, we conclude that the trial court did not abuse its discretion in admitting Matheny's answer.

---

[5] Matheny asserts that the record is unclear as to whether he made the statement before or after he received *Miranda* warnings. The major thrust of Matheny's argument is that if he had not been given his *Miranda* warnings, then the statement was inadmissible because it was given while he was in custody. Matheny also asserts that if he made the statement after he had been given *Miranda* warnings, then the statement was inadmissible because the trial court found that any statements he gave after receiving *Miranda* warnings were not admissible. However, at trial, the court specifically stated that Matheny's "motion to suppress the question regarding his address … is overruled." Tr. at 263.

## II. Jury Instructions

Matheny also argues that the trial court abused its discretion in refusing his tendered jury instructions. Instruction No. 1 read,

> Under the law of this state, a person charged with a crime is presumed to be innocent. This presumption continues in favor of the accused throughout the trial of this cause. To overcome the presumption of innocence, the State must prove the accused guilty of each essential element of the crime charged, beyond a reasonable doubt.
>
> Defendant is not required to present any evidence to prove his innocence or to prove or explain anything. *You should attempt to fit the evidence to the presumption that the Defendant is innocent.*
>
> If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to be reasonable, and one of which points to the guilt of the Defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with his innocence and reject that which points to his guilt.

Appellant's App. at 57 (emphasis added).

Instruction No. 6 read,

> You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case.
>
> *You should attempt to fit the evidence to the presumption that the accused is innocent* and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony you must determine which of the witnesses you will believe and which of them you will disbelieve.
>
> In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testify to a particular fact, or the quantity of evidence on a particular point need not control your

10

determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

*Id*. at 62 (emphasis added).

We review a trial court's decision to give or refuse a tendered instruction for an abuse of discretion. *Dora v. State*, 783 N.E.2d 322, 326 (Ind. Ct. App. 2003) *trans. denied.* In reviewing the trial court's decision, "'we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions.'" *O'Connell v. State*, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012) (quoting *Mumford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010)). A defendant is entitled to a reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights. *Buckner v. State*, 857 N.E.2d 1011, 1015 (Ind. Ct. App. 2006).

Both parties acknowledge our supreme court's holding in *Robey v. State*, 454 N.E.2d 1221 (Ind. 1983), that "[a]n instruction …which advises the jury that the presumption of innocence prevails until the close of the trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence if they could do so, must be given if requested." *Id*. at 1222. Further, the State acknowledges our recent decision in *Lee v. State*, 964 N.E.2d 859 (Ind. Ct. App. 2012), *trans. denied*, in which we held that the trial court's rejection of the defendant's tendered instruction containing the language emphasized in Matheny's tendered instructions resulted in reversible error. *Id*. at 863, 865. The State, however, argues that we should not find reversible error in this case because Instruction No. 1 is an incomplete statement of the law, the substance of Instruction No. 6 was adequately

covered by other instructions, and that even if it was error to refuse Matheny's tendered instructions, the error was harmless.

We agree with the State that Instruction No. 1 is incomplete with regard to its third paragraph:

> If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to be reasonable, and one of which points to the guilt of the Defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with his innocence and reject that which points to his guilt.

Appellant's App. at 57. In *Simpson v. State*, 915 N.E.2d 511 (Ind. Ct. App. 2009) *trans. denied* (2010), we concluded that the above language was incomplete without the following companion paragraph:

> You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.

*Id.* at 519-20 (quoting *Robey*, 454 N.E.2d at 1222).[6]  Accordingly, the trial court did not abuse its discretion in refusing Instruction No. 1.[7]

As for Matheny's tendered Instruction No. 6, the State does not argue that it is incomplete, but argues that the trial court's Instruction No. 14 adequately expressed the concept that the jury should attempt to fit the evidence to the presumption that the accused is innocent.  Instruction No. 14 read,

> **Direct evidence** means evidence that directly proves a fact, and that, if true, conclusively establishes the fact.
> **Circumstantial evidence** means evidence that proves a fact from which you may conclude the existence of another fact.
> It is not necessary that facts be proved by direct evidence.  Both direct evidence and circumstantial evidence are acceptable as a means of proof.  A conviction may be based solely on circumstantial evidence.  *Where proof of guilt is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence.*

---

[6] Matheny contends that the *Simpson* court did not affirm the trial court's refusal of the tendered instruction because it was incomplete.  Appellant's Reply Br. at 1.  Matheny misreads *Simpson*.  Incompleteness was one of two reasons that the *Simpson* court affirmed the trial court's refusal of the tendered instruction.  The *Simpson* Court explained,

> The State contends that Simpson's tendered instruction was incomplete because it failed to inform the jury that they could in fact conclude that one of the two opposing conclusions was unreasonable.  The State further contends that our Supreme Court's holding in *Robey* simply required an instruction that the jury should fit the evidence to the presumption that a defendant is innocent and that the trial court's instruction informed the jury as required by *Robey*.  We agree with the State.

915 N.E.2d at 520 (citations and quotation marks omitted).

[7] In *Lee*, another panel of this court reversed the trial court's refusal of a jury instruction that was identical to Matheny's Instruction No. 1, except that it did not contain the companion paragraph from *Robey*.  In *Lee*, the State did not argue that Lee's tendered instruction was missing the companion paragraph nor was *Simpson*'s holding discussed.  964 N.E.2d at 862-65.

Appellee's Br. at 13 (quoting Appellant's App. at 82) (emphasis Appellee's). We disagree

that the emphasized language in Instruction No. 14 adequately conveys the essential principle

that the jury should attempt to fit the evidence to the presumption that the accused is

innocent. Therefore, we conclude that the trial court abused its discretion in refusing

Instruction No. 6.[8]

Nevertheless, we agree with the State that the trial court's refusal of Instruction No. 6

was harmless error. Matheny failed to respond to the State's harmless error argument.

Failure to respond to an issue is akin to failing to file a brief. *Cox v. State*, 780 N.E.2d 1150,

1162 (Ind. Ct. App. 2002). "This failure does not relieve us of our obligation to correctly

apply the law to the facts in the record." *Id.* However, we are not responsible for developing

an argument on behalf of the appellant. *Id.*

The U.S. Supreme Court has said that "the failure to give a requested instruction on

the presumption of innocence does not in and of itself violate the Constitution." *Kentucky v.*

*Whorton*, 441 U.S. 786, 789 (1979). "[S]uch a failure must be evaluated in light of the

totality of the circumstances–including all the instructions to the jury, the arguments of

counsel, whether the weight of the evidence was overwhelming, and other relevant factors–to

determine whether the defendant received a constitutionally fair trial." *Id.*; *see also Vaughan*

*v. State*, 446 N.E.2d 1, 3 (Ind. Ct. App. 1983) (noting that Indiana followed *Whorton*); *but cf.*

*Lee*, 964 N.E.2d at 864-65 (concluding that trial court's refusal to give instruction on

---

[8] The *Simpson* court held that a jury instruction identical to Instruction No. 6 satisfied our supreme court's holding in *Robey*. 915 N.E.2d at 520. *See also Smith v. State*, No. 84A04-1112-CR-637, slip op. at 6 (Ind. Ct. App. Feb. 6, 2013) (citing *Simpson*).

presumption of innocence was reversible error where State failed to respond to defendant's argument that error was not harmless). Generally, "[e]rrors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Smith v. State*, 755 N.E.2d 1150, 1152 (Ind. Ct. App. 2001) *trans. denied*.

Here, the jury was instructed that Matheny was presumed innocent and was not required to prove his innocence or to prove or explain anything. Appellant's App. at 79 (Instruction No. 11). The jury was also informed that the State bore the burden of proving that the defendant is guilty beyond a reasonable doubt. *Id*. at 80 (Instruction No. 12). The jury was further instructed that where proof of guilt is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence. *Id*. at 82 (Instruction No. 14).

During voir dire, defense counsel stated, "We presume Mr. Matheny's innocent. … if you presume they're guilty instead of innocent you might convict someone falsely." Tr. at 131, 133. During final argument, defense counsel told the jury, "He's presumed innocent. You must fit every reasonable hypothesis with his innocence and assume he's innocent and start from that and not the other way around." *Id*. at 314.

Finally, the evidence does not support a reasonable theory of innocence. Matheny was found in possession of Dedinsky's car at 2:20 a.m., between five and eight hours after the theft. He was seen sitting in the driver's seat. The car was in a ditch with substantial front-end damage, the airbag in the driver's side had deployed, and Matheny had a bloody cut

above his right eyebrow.  Matheny had the key to the car but surreptitiously dropped it on the ground.  He gave conflicting stories about his involvement with the car to the police.  Based on the totality of the circumstances, we conclude that the trial court's refusal to give Instruction No. 6 was harmless error.

Affirmed.

MATHIAS, J., and KIRSCH, J., concur.