## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2016, 7:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Patricia Caress McMath
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Myron Tools,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 30, 2016

Court of Appeals Case No.
49A02-1512-CR-2073

Appeal from the
Marion Superior Court

The Honorable
Marshelle Broadwell, Magistrate

Trial Court Cause No.
49G17-1508-F6-29908

**Kirsch, Judge.**

Myron Tools ("Tools") was convicted following a jury trial of battery resulting in moderate bodily injury[1] as a Level 6 felony, criminal confinement[2] as a Level 6 felony, domestic battery[3] as a Class A misdemeanor, and battery resulting in bodily injury[4] as a Class A misdemeanor and pleaded guilty to being a habitual offender.[5] The trial court sentenced Tools to two and one-half years for each of the two Level 6 felonies and one year for the Class A misdemeanor domestic battery and ordered the sentences to be served concurrently in the Indiana Department of Correction. The trial court did not sentence Tools for the Class A misdemeanor battery resulting in bodily injury; instead, the court merged that count into the domestic battery count. *Tr.* at 293. The trial court also sentenced Tools to two and one-half years for being a habitual offender, and ordered that sentence to run consecutive to the other sentences, for an aggregate sentence of five years. Tools appeals, raising the following restated issues:

> I. Whether the trial court erred in refusing Tools's instruction on presumption of innocence;

> II. Whether Tools's convictions for Level 6 felony battery resulting in moderate bodily injury and Class A misdemeanor

---

[1] *See* Ind. Code § 35-42-2-1(e)(1).

[2] *See* Ind. Code § 35-42-3-3(a).

[3] *See* Ind. Code § 35-42-2-1.3(a).

[4] *See* Ind. Code § 35-42-2-1(d)(1).

[5] *See* Ind. Code § 35-50-2-8.

domestic battery violate the double jeopardy protections set forth in the Indiana Constitution;[6] and

III. Whether the case should be remanded with instructions that the trial court prepare a new sentencing order to correct errors found in the existing sentencing order.

[2] We affirm in part, vacate in part, and remand with instructions.

## Facts and Procedural History

[3] In August 2015, Tools and N.N., who had resided together for over five years, lived with their three-year-old daughter in an apartment located in Marion County, Indiana. During the night of August 19 through the morning of August 20, 2015, the couple's shared use of a car created conflict, causing Tools to become increasingly agitated with N.N. That night, Tools cursed and yelled at N.N. to hurry up as he waited to pick her up. He also yelled at N.N. while ordering her to drive him to a friend's house. Later that night, Tools called and told N.N. to pick him up; when N.N. refused, Tools became angry and, again cursing, said he was "coming to get [his] shit." *Tr.* at 89.

[4] N.N., thinking that Tools wanted to break up with her, drove to the house of her mother ("Joyce") and dropped off her child to be cared for by N.N.'s sister. N.N. left her car at Joyce's house, and N.N. and Joyce drove back in Joyce's

---

[6] Tools's only double jeopardy claim arises under the Indiana Constitution; he raises no claim under the United States Constitution.

car to N.N.'s apartment to pack up Tools's belongings. While N.N. was packing, Tools arrived at the apartment; he was very angry and accused N.N. of hiding the couple's child and the car. Tools then ordered N.N. to get a blanket from upstairs and followed her while yelling. The fight escalated, and Tools kicked and damaged the couple's 55-inch flat-screen television. N.N. screamed, prompting Joyce to run upstairs. Joyce urged N.N. to leave, but Tools would not let N.N. leave and ordered her to finish packing his things. Tools then grabbed N.N. by her hair and began punching her head and face with a closed fist, causing N.N. extreme pain. Joyce tried to push Tools off of N.N., but was unsuccessful.

[5] Tools picked N.N. up off the floor and said he was sorry. Joyce left to get the car while N.N. lay on the couch with her head pounding in pain. Tools proceeded to pull N.N. off the couch and onto the floor; he then leaned over her telling her, repeatedly, that he was sorry. N.N. tried to leave, but was unable to do so because Tools was on top of her. Tools eventually released N.N., who left the apartment with Joyce.

[6] An examination at the hospital revealed that N.N. had a cut on her head, a knot and some abrasions on her forehead, and a swollen nose. Indianapolis Metropolitan Police Officer Gene Smith ("Officer Smith") was dispatched to the hospital to speak with N.N. and noted that N.N. had a knot on her forehead, and her nose was swollen. N.N. told Officer Smith that Tools had battered her.

[7] Tools was arrested and initially charged with Level 6 felony battery resulting in moderate bodily injury; Level 6 felony intimidation; Level 6 felony criminal confinement; domestic battery enhanced to a Level 6 felony based on prior domestic battery convictions; and Class A misdemeanor battery resulting in bodily injury. Prior to trial, the State moved to dismiss the intimidation count and chose not to prosecute the enhancement for domestic battery. *Appellant's App*. at 29-31. This resulted in the State filing an amended information charging Tools with: Count I, Level 6 felony battery resulting in moderate bodily injury; Count II, Level 6 felony criminal confinement; Count III, Class A misdemeanor domestic battery; and Count IV, Class A misdemeanor battery resulting in bodily injury. *Id*. at 77-78. Also prior to trial, the State filed an information alleging Tools was a habitual offender.

[8] At the commencement of trial, Tools tendered to the trial court Preliminary Instruction No. 1,[7] an instruction on presumption of innocence. The trial court refused Tools's instruction, concluding that the substance of the instruction was covered by the trial court's other instructions, particularly Preliminary Instruction No. 7. The jury found Tools guilty on all four counts, and Tools pleaded guilty to being a habitual offender.

[9] During the sentencing hearing, the trial court stated:

---

[7] Tools tendered numerous instructions, all of which were refused, but only one of which forms the basis of this appeal, Preliminary Instruction No. 1.

> [A]s to Battery with Moderate Bodily Injury, 2 1/2 years,
> Confinement as a Level 6 Felony, 2 1/2 years, Domestic Battery
> as a Class A misdemeanor, 1 year, um battery as a class a
> misdemeanor, merges into a domestic battery count. Those
> counts will all run concurrent, meaning at the same time. The
> habitual offender enhancement will run consecutive . . . .

*Tr.* at 293. While recognizing that being a habitual offender is an enhancement, the trial court did not attach the habitual offender finding to enhance the sentence for one of Tools's felony convictions; instead, the trial court ordered, the habitual offender enhancement "will run consecutive." *Id.* Tools now appeals.

# Discussion and Decision

# I. Jury Instructions

[10] Tools argues that it was reversible error for the trial court to refuse his tendered Preliminary Instruction No. 1, which read:

> Under the law of this state, a person charged with a crime is
> presumed to be innocent. *This presumption continues in favor of the*
> *accused throughout the trial of this cause.* To overcome the
> presumption of innocence, the State must prove the Defendant
> guilty of each essential element of the crime charged, beyond a
> reasonable doubt.
>
> The Defendant is not required to present any evidence to prove
> his/her innocence or to prove or explain anything.
>
> You should attempt to fit the evidence to the presumption that
> the Defendant is innocent.

*If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Defendant, and the other to his innocence, it is your duty, under the law to adopt that interpretation which is consistent with the Defendant's innocence, and reject that which points to his guilt.*

*Appellant's App.* at 94 (emphasis added).

[11] The trial court refused this tendered instruction on the grounds that the content was adequately covered in other instructions. Omitting the emphasized language of Tools's Preliminary Instruction No. 1, the trial court's Preliminary Instruction No. 7 read:

> Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the Defendant guilty of each element of the crime charged, beyond a reasonable doubt.
>
> The Defendant is not required to present any evidence to prove his innocence or to prove or explain anything. You should attempt to fit the evidence to the presumption that the Defendant is innocent and the theory that every witness is telling the truth.

*Id.* at 116.

[12] "The Fourteenth Amendment requires the trial court to instruct the jury in criminal cases that the accused is presumed innocent until proven guilty beyond a reasonable doubt." *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015). Failure to give a requested instruction on the presumption of innocence, however, is not in and of itself a violation of the Constitution. *Kentucky v.*

*Whorton*, 441 U.S. 786, 789 (1979). "Indeed, the purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *McCowan*, 27 N.E.3d at 764 (citation omitted) (internal quotation marks omitted).

[13] Citing to *McCowan*, Tools contends that the trial court erred when it refused Preliminary Instruction No. 1. In *McCowan*, our Supreme Court stated, "A defendant in a criminal case is *per se* entitled to a jury instruction that the defendant is presumed innocent until proven guilty beyond a reasonable doubt." *Id.* at 766. Clarifying its holdings in *Farley v. State*, 127 Ind. 419, 420, 26 N.E. 898, 899 (1891) and *Robey v. State*, 454 N.E.2d 1221, 1222 (Ind. 1983), the Court recognized, "In addition, the defendant is entitled to request the following jury instruction, and the trial court must give this instruction if requested: 'The presumption of innocence continues in favor of the defendant throughout the trial. You should fit the evidence to the presumption that the defendant is innocent if you can reasonably do so.'" *McCowan*, 27 N.E.3d at 766. The *McCowan* Court referred to this as a "bright-line" rule. *Id*. The Court, however, went on to say, "If the defendant adds to or varies this language in his request, inclusion of that variation remains within the discretion of the trial court, under the traditional three-prong analysis established by our jurisprudence." *Id*.

[14] Here, Preliminary Instruction No. 1 added and varied the language from the bright-line rule; accordingly, under *McCowan*, the "inclusion of that variation

remain[ed] within the discretion of the trial court," to be analyzed "under the traditional three-prong analysis established by our jurisprudence." *Id*. Under the three-prong analysis, we review a trial court's decision to give or refuse a tendered instruction for an abuse of discretion. *Id*. at 763. "To determine whether a jury instruction was properly refused, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given." *Id*. at 763-64 (internal quotation marks omitted). In so doing, "we consider the instructions as a whole and in reference to each other and do not reverse the trial court for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case." *Id*. at 764 (citations omitted) (internal quotation marks omitted). "An improper instruction will merit reversal only if it 'so affects the entire charge that the jury was misled as to the law in the case.'" *Tinkham v. State*, 787 N.E.2d 440, 442 (Ind. Ct. App. 2003) (quoting *Hubbard v. State*, 742 N.E.2d 919, 921 (Ind. 2001)).

[15] On appeal, Tools claims that Preliminary Instruction No. 1 "is a correct statement of the law and the substance was not covered by the court's instructions."[8] *Appellant's Br*. at 11. At trial, addressing the reasons to instruct

---

[8] Because a defendant is per se entitled to an instruction on the presumption of innocence, there is no issue on appeal regarding "whether there was evidence presented at trial to support giving the instruction." *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015).

the jury on Preliminary Instruction No. 1, the following colloquy took place between the trial court and defense counsel Tyler Doane ("Doane"):

> THE COURT: What concept in your offer number one do you think [is] not covered by the court['s] propose[d] instructions?
>
> MR. T. DOANE: You said [it's] court instruction number seven, Your Honor?
>
> THE COURT: Yes.
>
> MR. T. DOANE: Well, Your Honor. I guess in two parts, um the first being that the -- *the portion where the case is susceptible of two constructions of interpretation, that um, one of which points [to] the guilt [of] the defendant, and the other to his innocence, it's your duty to adopt the interpretation which [is] consistent with the defendant['s] innocence and reject that [which] point[s] to [his] guilt.* Um, the second is that, the -- you should, um, the portion where it said, that every witness is telling the truth, that's lumped in . . . with presumption of innocence.
>
> THE COURT: Well, the presumption of innocence is stated twice in preliminary instruction number seven and I think it's a fair statement of the concept you talked about in proposed number one, [that] the defendant is not required to present any evidence to prove his innocence or to prove or explain anything. You should attempt to fit the evidence to the presumption that the defendant is innocent. I think that . . . is good enough, go on to your next one.[9]

---

[9] Tools does not address on appeal the objection he made at trial concerning the inclusion of "every witness is telling the truth," within Preliminary Instruction No.7.

*Tr*. at 16-17. As the exchange reveals, Tools's major concern at trial was the absence of the last paragraph ("Paragraph 4") of Preliminary Instruction No. 1, which read:

> If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Defendant, and the other to his innocence, it is your duty, under the law to adopt that interpretation which is consistent with the Defendant's innocence, and reject that which points to his guilt.

*Appellant's App*. at 94.

[16] In *Robey*, our Supreme Court approved the use of an instruction that contained the following two paragraphs:

> If the evidence in this case is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.
>
> You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt.

*Robey*, 454 N.E.2d at 1222. Paragraph 4 of Tools's tendered instruction was modeled after the first paragraph of the *Robey* instruction; however, Tools's Preliminary Instruction No. 1 did not include the second paragraph approved in *Robey*. The omission of that second paragraph was critical. In *Matheny v. State*, 983 N.E.2d 672, 678 (Ind. Ct. App. 2013), *aff'd on reh'g*, 987 N.E.2d 1169 (Ind. Ct. App. 2013), considering a tendered instruction that was essentially identical to Preliminary Instruction No. 1, a panel of this court found that such instruction, which contained only the first paragraph of the *Robey* instruction, was an incomplete statement of law and that the trial court did not abuse its discretion when it refused Matheny's tendered instruction. *Matheny*, 983 N.E.2d at 680.

[17] Thereafter, our Supreme Court in *McCowan* confirmed that "inclusion of [*Robey*'s two] paragraphs remains within the sound discretion of the trial court, and *both paragraphs should be included together, if at all*." *McCowan*, 27 N.E.3d at 766 n.4 (emphasis added). Here, where Tools tendered only the first of the two paragraphs from the *Robey* instruction, Preliminary Instruction No.1 was an incomplete statement of the law, and the trial court did not abuse its discretion when it refused to use that tendered instruction.

[18] The *McCowan* Court also held that the following instruction must be given if requested, "The presumption of innocence continues in favor of the defendant throughout the trial. You should fit the evidence to the presumption that the defendant is innocent if you can reasonably do so." *McCowan*, 27 N.E.3d at 766. On appeal, Tools contends that the trial court erred in rejecting his

tendered language that "[t]he presumption of innocence continues in favor of the defendant throughout the trial."[10] *Id*. It is unclear whether *McCowan* contemplates that a trial court must review a tendered instruction in its entirety or allows a trial court to review distinct paragraphs within a single instruction, applying different standards of review for each. We need not address this issue, however, because Tools does not prevail under either scenario. Assuming without deciding that the trial court erred in refusing to instruct the jury that a presumption of innocence continues in favor of the accused throughout the trial of this cause, that error was harmless under the facts of this case.

[19] The United States Supreme Court has said that "the failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution." *Whorton*, 441 U.S. at 789. Instead, "such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial." *Id.*; *see also Vaughan v. State*, 446 N.E.2d 1, 3 (Ind. Ct. App. 1983) (noting that Indiana followed *Whorton*); *but cf. Lee v. State,* 964 N.E.2d 859, 864-65 (Ind. Ct. App. 2012)*, trans. denied* (concluding that trial court's refusal to give instruction on presumption of

---

[10] In Preliminary Instruction No. 7, the trial court gave an instruction comparable to the following language in *McCowan*, "You should fit the evidence to the presumption that the defendant is innocent if you can reasonably do so." *McCowan*, 27 N.E.3d at 766. Accordingly, Tools does not contend that the trial failed to comply with this part of *McCowan*'s bright-line rule. *Appellant's App.* at 12.

innocence was reversible error where State failed to respond to defendant's argument that error was not harmless). "Generally, '[e]rrors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise.'" *Matheny*, 983 N.E.2d at 681 (quoting *Smith v. State*, 755 N.E.2d 1150, 1152 (Ind. Ct. App. 2001), *trans. denied*)), *aff'd on reh'g*, 987 N.E.2d 1169 (Ind. Ct. App. 2013).

[20] During voir dire, the trial court in the present case explained to the jury that "[u]nder the United States Constitution, a person charged with a crime is presume[d] innocent and . . . [t]o overcome the presumption of innocen[ce], the State must prove beyond a reasonable doubt each essential element of the crime charge[d]." *Tr.* at 50. The trial court asked the voir dire panel whether any of them disagreed with the principle that the "defendant does not have to prove he is innocent." *Id.* None of the jurors responded.

[21] Upon review of all of the instructions, we find that the trial court's preliminary instructions adequately advised the jury regarding Tools's presumption of innocence. In Preliminary Instruction No.1, the jury was told to "keep an open mind. You should not form or express any conclusion or judgment about the outcome of the case until the Court submits the case to you for your deliberations. *Appellant's App*. at 102. Preliminary Instruction No. 6 informed the jury, "The filing of a charge or the Defendant's arrest is not to be considered by you as any evidence of guilt." *Id.* at 115. Preliminary Instruction No. 7 advised the jury that Tools was presumed innocent, and he was not required to prove his innocence or to prove or explain anything. *Id.* at 116. Preliminary

Instruction No. 8 read, "The burden is upon the State to prove beyond a reasonable doubt that the Defendant is guilty of the crimes charged. It is a strict and heavy burden." *Id*. at 117. It also said, "A Defendant must not be convicted on suspicion or speculation[,]" and "The State must prove each element of the crimes by evidence that firmly convinces each of you and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in a matter of the highest importance." *Id*. Final Jury Instruction No. 1 advised the jury to consider the preliminary instructions along with the final instructions to arrive at a verdict. *Id*. at 124.

[22] Here, there was no issue of identification, and Tools's conviction was supported by direct and not circumstantial evidence. N.N., who had lived with Tools for more than five years, testified that, on the night in question, she was packing up Tools's belongings when he entered the apartment. *Tr*. at 94-95. Tools was angry and ended up grabbing N.N. by the hair and punching her head and face with a closed fist, causing N.N. extreme pain. *Id*. at 96-97. N.N.'s mother, Joyce, was also in the apartment and tried to push Tools off of N.N., without success. *Id*. at 97. N.N. testified that, after Joyce left to get her car, Tools pulled N.N. to the floor, leaned over her, and would not let her get up. *Id*. at 105. Joyce testified that she was in the apartment with N.N. as N.N. was packing up Tools's belongings, when Tools arrived at the apartment and joined N.N. upstairs. *Id*. at 139. Joyce, who was worried about N.N., waited on the stairs. Upon hearing a crash, Joyce ran upstairs and saw Tools "drop[] a whole bunch of stuff on [N.N.'s] head"; Tools grabbed the "back of [N.N.'s] head

with her hair and he was punching her up." *Id*. at 141. We conclude that Tools's conviction is clearly supported by the evidence, and the jury could not properly have found otherwise. Based on the totality of the circumstances, we conclude that the trial court's refusal to give Preliminary Instruction No. 1, if error, was harmless.

## II. Double Jeopardy

[23] Tools claims that his convictions and accompanying sentences for Level 6 felony battery resulting in moderate bodily injury and Class A misdemeanor domestic battery violate Indiana's double jeopardy principles because the basis for both battery charges, and resultant injuries, arose from the same act of hitting N.N. Our court reviews de novo whether a defendant's convictions violate double jeopardy principles. *Sloan v. State*, 947 N.E.2d 917, 920 (Ind. 2011).

[24] The Double Jeopardy Clause found in Article 1, Section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." We analyze alleged violations of Indiana's Double Jeopardy Clause pursuant to *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). In *Richardson*, our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article 1, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish

the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49 (emphasis in original).

[25] Under the "actual evidence" test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015) (citing *Richardson*, 717 N.E.2d at 53). The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). The fact that the same evidence may have been used to establish a single element of each of two offenses, however, does not constitute a double jeopardy violation. *Hines*, 30 N.E.3d at 1221 (citing *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)).

[26] Application of this test requires the court to: (1) identify the essential elements of each of the challenged crimes; and (2) evaluate the evidence from the perspective of the finder of fact. *Newgent v. State*, 897 N.E.2d 520, 525 (Ind. Ct. App. 2008) (quoting *Lee*, 892 N.E.2d at 1234) (quotation marks omitted). In determining the facts used by the jury to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel. *Id*.

[27] In the count for battery resulting in moderate bodily injury, the State charged that Tools "did knowingly or intentionally touch [N.N.] in a rude, insolent, or

angry manner, resulting in moderate bodily injury to the other person, specifically swelling and/or lacerations resulting in substantial pain to [N.N.]" *Appellant's App.* at 77. In the domestic battery count, the State charged that Tools did knowingly touch N.N. (with whom Tools had a child in common) "in a rude, insolent, or angry manner, to wit: struck and beat [N.N.] and grabbed her by the hair and pulled her hair, and further said touching resulting in bodily injury to the other person, specifically swelling and/or lacerations and/or pain." *Id*. at 78. The State agrees that the two counts charge the same conduct and that the evidence, instructions, and the prosecutors' argument do not support two separate convictions. *Appellee's Br*. at 17. Accordingly, we remand this case and instruct the trial court to vacate Tools's conviction for Class A misdemeanor domestic battery.

## III. Sentencing Order

Tools contends that this case should be remanded to the trial court with instructions to correct his sentencing order, and he highlights three errors. First, he argues that the trial court's act of merging his Class A misdemeanor battery resulting in bodily injury into his Class A misdemeanor domestic battery did not resolve the violation of double jeopardy protections. Second, he maintains that the trial court erred when it did not use his habitual offender finding to enhance a specific felony, but instead, imposed a two and one-half year sentence and ordered that it run consecutively to his other concurrent sentences. Third, he contends that the sentencing order "needs to be corrected

to accurately reflect the charges for which the jury found Tools guilty."
*Appellant's App.* at 17.

### A. Merging versus Vacating

[29]     Tools contends that the trial court's act of merging the conviction for Count IV, Class A misdemeanor battery resulting in bodily injury, into his conviction for Count III, Class A misdemeanor domestic battery, was insufficient to remedy the violation of double jeopardy protections. "[U]se of the same evidence to convict a person of multiple crimes is a violation of the double jeopardy prohibition." *Steele v. State*, 42 N.E.3d 138, 145 (Ind. Ct. App. 2015) (citing *Richardson*, 717 N.E.2d at 49 (defining double jeopardy under Indiana Constitution)).

> If a trial court has entered multiple convictions based on the same evidence, then the trial court's act of merging, without also vacating, the convictions is not sufficient. Indeed, *a double jeopardy violation occurs when judgments of conviction are entered* and cannot be remedied by the practical effect of concurrent sentences or by merger after conviction has been entered.

*Id.* (quoting *Payton v. State*, 818 N.E.2d 493, 497 (Ind. Ct. App. 2004)) (emphasis added) (internal quotation marks omitted). "However, double jeopardy is not implicated when a defendant is found guilty of multiple counts that are merged into a single conviction." *Id.* (citing *Green v. State*, 856 N.E.2d 703, 704 (Ind. 2006) ("a merged offense for which a defendant is found guilty, but on which there is neither a judgment nor a sentence, is 'unproblematic' as far as double jeopardy is concerned")). Here, the status of the convictions is

unclear. The sentencing order improperly sets forth that Tools *pleaded guilty* to Class A misdemeanor battery resulting in bodily injury when, in fact, he was found guilty of that count. Additionally, the sentencing order improperly sets forth that Tools's conviction for domestic battery was merged, when it was the battery resulting in bodily injury that merged into the domestic battery. Accordingly, we remand to the trial court with instructions to amend the sentencing order to correctly reflect the charges and convictions and, if required to comply with our court's reasoning in *Steele*, vacate Tools's conviction for Class A misdemeanor battery resulting in bodily injury.

### B. Habitual Offender Sentence

[30]   Tools next argues that the trial court erred when it did not attach his habitual offender finding to a specific felony as a sentence enhancement, but instead, imposed a two and one-half year sentence and ordered that it run consecutively to his other concurrent sentences. We agree.

[31]   Indiana Code section 35-50-2-8(j) in part provides:

> Habitual offender is a status that results in an enhanced sentence. It is not a separate crime and does not result in a consecutive sentence. The court shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed and specify which felony count is being enhanced.

During the sentencing hearing, the trial court referred to the term "habitual offender enhancement." *Tr.* at 293. While apparently recognizing that being a habitual offender is an enhancement and not a separate offense, the trial court

did not attach the habitual offender enhancement to a felony conviction. *Id.* Tools argues that the trial court erred when it imposed a separate two and one-half year sentence on the habitual offender finding and ordered that sentence to be served consecutive to the concurrent sentences for Tools's convictions. The State agrees. *Appellee's Br*. at 17-18.

[32]    Because the trial court entered a separate sentence on Tools's habitual offender determination, we remand to the trial court with instructions to correct the sentencing order, abstract of judgment, and chronological case summary to (1) reflect that Tools pleaded guilty to being a habitual offender, and (2) identify which of Tools's Level 6 felony sentences will be enhanced by two and one-half years on the basis of the habitual offender adjudication.

### C. Sentencing Order

[33]    Finally, Tools seeks that this case be remanded to the trial court with instructions to amend the sentencing order to accurately reflect the charges for which the jury found Tools guilty. *Appellant's App*. at 17. We agree. In addition to the errors discussed above, the sentencing order improperly indicates: (1) that Tools was found guilty of intimidation, a charge that was dismissed prior to trial; and (2) that Tools's domestic battery conviction was a Level 6 felony, when the State tried him for domestic battery as a Class A misdemeanor.

[34]    We affirm Tools's convictions for Level 6 felony battery resulting in moderate bodily injury and Level 6 felony criminal confinement, vacate his conviction for

domestic battery on the basis of double jeopardy concerns, and remand to the trial court with instructions to amend the sentencing order, abstract of judgment, and chronological case to accurately reflect Tools's convictions and sentence.

[35] Affirmed in part, vacated in part, and remanded with instructions.

[36] Riley, J., and Pyle, J., concur.