FILED

Nov 09 2023, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Timothy J. O'Connor
O'Connor & Auersch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry Jo Taylor, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | November 9, 2023 <br><br> Court of Appeals Case No. 22A-CR-2615 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Jeffrey L. Marchal, Judge <br><br> The Honorable Grant W. Hawkins, Judge Pro Tempore <br><br> Trial Court Cause No. 49D31-1511-MR-41732 |

**Opinion by Judge Tavitas**
Judges Pyle and Foley concur.

**Tavitas, Judge.**

## Case Summary

[1] Larry Taylor appeals his convictions for murder, a felony; three counts of burglary, Level 4 felonies; three counts of theft, Level 6 felonies; criminal confinement, a Level 3 felony; auto theft, a Level 6 felony; and carrying a handgun without a license, a Class A misdemeanor. On appeal, Taylor contends that his statements to law enforcement regarding his cell phone and cell phone number were inadmissible. As the statements were never admitted at trial, we find no error. Accordingly, we affirm.

## Issue

[2] Taylor raises one issue, which we restate as whether Taylor's statements to law enforcement regarding his cell phone and cell phone number were inadmissible.

## Facts

[3] In the early morning hours of November 10, 2015, Taylor was at an apartment in Indianapolis with Diano Gordon and Jalen Watson. The three men left the apartment to commit a burglary. Taylor was armed with a .38 caliber revolver.

[4] The men first burglarized the apartment of Jacola Searsbrook, where they stole several items, including a four-door silver Chrysler Sebring. Searsbrook and her three daughters were asleep in the apartment at the time. After noticing a security camera inside the house, Taylor "wanted to kill everybody," but the others convinced him not to do so. Tr. Vol. VIII p. 19.

[5]     The men drove the Sebring to a housing addition where they burglarized the home of Alison Becker, who was not at home during the burglary. They stole several items, including a pink sweater. As the men were loading the stolen items into the Sebring, Taylor observed David Blackburn, who lived across the street from Becker, leave his residence shortly after 6:00 a.m. Blackburn was going to the gym, and his pregnant wife, Amanda, and their toddler son were still sleeping.

[6]     Taylor, Gordon, and Watson entered the Blackburn residence through the front door and began rummaging through the house, where they discovered Amanda and her son. The men ordered Amanda to go to an ATM with them, but she refused. Gordon and Watson then took Amanda's debit card to a bank while Taylor stayed with Amanda. The first ATM transaction was denied. Taylor then called Gordon and Watson and was "yelling [ ] because he felt [they were] gone for too long." *Id.* at 101. Gordon and Watson obtained the correct code or zip code for the account from Taylor. At a different ATM, Watson wrapped Becker's pink sweater around his face and withdrew $400 from Amanda's bank account.

[7]     While Gordon and Watson were gone, Taylor attempted to forcibly have sexual intercourse with Amanda. Amanda fought with Taylor, and Taylor shot her in the arm, back, and back of her head. Taylor then demanded that Gordon and Watson pick him up. At approximately 7:20 a.m., Watson and Gordon returned and saw Taylor walking down the street near the Blackburn residence, and they picked Taylor up. Taylor told Watson and Gordon that he "smoked"

Amanda, meaning that he "killed her." *Id.* at 104. Taylor said that he "watched [Amanda] bleed out." *Id.* at 105.

[8] When David arrived home at approximately 8:00 a.m., he discovered Amanda nude and lying face down in the living room. David called 911, but Amanda later died of the gunshot wound to her head. The bullet was likely shot from a .38 Special revolver.

[9] Detective Thomas Lehn was assigned to investigate the Blackburn shooting and the nearby Becker burglary. Detective Lehn became aware of a Chase banking alert on Amanda's phone. Officers then obtained photographs of someone driving a silver Chrysler attempting to withdraw money from Amanda's bank account at an ATM at approximately 6:36 a.m. on the morning of her murder. Officers also obtained photographs of someone with a pink sweater wrapped around his face and driving a silver Chrysler withdrawing money from Amanda's bank account at a different ATM at approximately 6:53 a.m.

[10] Law enforcement obtained surveillance video from several neighbors showing a light-colored Chrysler Sebring in the neighborhood on the morning of the shooting. Detective Lehn then learned that a light-colored Chrysler Sebring was stolen in the Searsbrook burglary. The Sebring was located parked along the side of a road. Inside the Sebring, officers discovered Becker's pink sweater and an ATM receipt from Amanda's bank account. On November 17, 2015, DNA on the pink sweater was matched to Watson, and the detectives began to investigate Watson's background and associates. Detective Lehn learned that

Gordon was an associate of Watson and discovered cell phone numbers for both men. Officers obtained a search warrant for historical data on both phone numbers. Officers learned that another phone number ending in 7125 ("7125 Phone") contacted Watson's and Gordon's phone numbers during the burglaries and that the same phone was present in the area of the burglaries. Although Watson's phone was moving at 6:39 a.m., the 7125 Phone stayed near the Blackburn residence. Officers then connected Taylor to the 7125 Phone number through prior police reports and an online prostitution advertisement.

[11] On November 19, 2015, officers tracked the 7125 Phone to an address on South Meridian Street, which belonged to Taylor's cousin. The officers located Taylor at the residence and seized the 7125 Phone. Detective Lehn then interviewed Taylor. Before reading Taylor his *Miranda* rights, Detective Lehn asked Taylor for preliminary identifying information, including his full name, date of birth, social security number, address, and cell phone number. After being read his *Miranda* rights, Taylor confirmed that the 7125 Phone belonged to him. Taylor was released from custody following his interview.

[12] On November 22, 2015, law enforcement arrested Taylor, and the State charged him with murder, a felony; two counts of felony murder; burglary, a Level 1 felony; two counts of burglary, Level 4 felonies; three counts of theft, Level 6 felonies; robbery resulting in serious bodily injury, a Level 2 felony; criminal confinement, a Level 3 felony; auto theft, a Level 6 felony, and carrying a handgun without a license, a Class A misdemeanor.

[13] Taylor filed a motion to suppress his statements to law enforcement regarding his cell phone and cell phone number, which were given prior to him receiving his *Miranda* advisement. At a hearing on the motion, counsel indicated that deposition testimony regarding the seizure of Taylor's phone was conflicting. According to Sergeant Mark Hess, when the officers found Taylor at his cousin's residence, Sergeant Hess asked Taylor if he wanted to take anything with him, and Taylor pointed to the phone. Detective Daniel Kepler, however, indicated that an officer asked Taylor if the phone belonged to him, and Taylor said that it did. Taylor sought to suppress this pre-*Miranda* advisement statement regarding ownership of the phone. Additionally, Taylor sought to suppress his pre-*Miranda* advisement answer to Detective Lehn's preliminary identifying information question regarding Taylor's cell phone number. The trial court denied Taylor's motion.

[14] The trial court granted mistrials in two jury trials, and Taylor then waived his right to a jury trial. In September 2022, the trial court held a bench trial. Watson and Gordon testified at the trial regarding Taylor's actions. At the trial, the State did not seek to admit Taylor's statements regarding his phone when he was found at his cousin's house. Additionally, Detective Lehn testified that, before advising Taylor of his *Miranda* rights, he asked Taylor for certain preliminary identifying information. Detective Lehn later testified that, after Taylor was read his *Miranda* rights, Taylor confirmed that the 7125 Phone belonged to him. Taylor did not object to the admission of the 7125 Phone or

its contents. The State also did not seek to admit Taylor's responses to the preliminary identifying information questions.

[15] The trial court found Taylor guilty of murder, a felony; one count of felony murder; burglary, a Level 1 felony; two counts of burglary, Level 4 felonies; three counts of theft, Level 6 felonies; criminal confinement, a Level 3 felony; auto theft, a Level 6 felony; and carrying a handgun without a license, a Class A misdemeanor. The trial court later vacated the felony murder guilty verdict and reduced the Level 1 felony burglary to a Level 4 felony. The trial court sentenced Taylor to an aggregate sentence of eighty-six years in the Department of Correction. Taylor now appeals.

## Discussion and Decision

[16] On appeal, Taylor challenges the denial of his motion to suppress regarding his pre-*Miranda* advisement statements. Because Taylor's case proceeded to trial, "his appeal is better framed as a request to review the trial court's ruling on its admissibility." *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014) (citing *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013) ("Direct review of the denial of a motion to suppress is only proper when the defendant files an interlocutory appeal.")). The trial court has broad discretion to rule on the admissibility of evidence. *Id.* We review a trial court's ruling on the admission of evidence "for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* When an appellant's challenge to such a ruling raises a

constitutional issue, it is "question of law, and we consider that question de novo." *Id.* at 40-41.

[17] Taylor's arguments concern his statements regarding his phone when he was located at his cousin's residence and his pre-*Miranda* advisement statement to Detective Lehn regarding his phone number. In general, "routine administrative questions such as name, address, height, and weight, regardless whether considered within a 'routine booking exception' or whether deemed 'not testimonial,' are removed from the requirements of *Miranda*." *Loving v. State*, 647 N.E.2d 1123, 1126 (Ind. 1995) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02, 110 S. Ct. 2638, 2650 (1990)); *see also Matheny v. State*, 983 N.E.2d 672, 678 (Ind. Ct. App. 2013) (holding that officer's questions regarding the defendant's address were routine identification questions even though the defendant's answer was ultimately incriminating), *aff'd on rehearing*, 987 N.E.2d 1169 (Ind. Ct. App. 2013), *trans. denied*.

[18] The State points out that the trial court could not have abused its discretion because Taylor's statements at issue were not admitted into evidence at trial. We agree with the State. The State did not admit evidence that Taylor identified the phone as his when he was located at his cousin's residence. Rather, the State only admitted evidence that the 7125 Phone was tracked to the residence and that it was seized by law enforcement. Further, at trial, Detective Lehn testified that, before advising Taylor of his *Miranda* rights, Detective Lehn asked Taylor for preliminary identifying information, including his cell phone number. The State, however, did not seek to admit Taylor's

response to the question into evidence. The trial court could not have abused its discretion because Taylor's statements were never admitted into evidence.[1]

[19] Moreover, even if Taylor's statements had been admitted, any error would have been harmless. Overwhelming evidence connected the 7125 Phone to Taylor and to the three burglaries, and law enforcement was aware of Taylor's connection to the phone number prior to Taylor's statements. Gordon and Watson testified at the trial that Taylor was with them during the three burglaries and that Taylor admitted to shooting Amanda. Accordingly, any error in the admission of the statements would have been harmless.[2]

## Conclusion

[20] Taylor's arguments regarding his statements fail because Taylor's statements were not admitted into evidence during the trial. Accordingly, we affirm Taylor's convictions.

[21] Affirmed.

Pyle, J., and Foley, J., concur.

---

[1] Moreover, when Detective Lehn testified regarding the preliminary identifying information questions, Taylor did not object. In fact, Taylor did not renew his motion to suppress until later in Detective Lehn's testimony.

[2] Taylor also argues that his post-*Miranda* confirmation of his phone number did not cure the earlier violation of his *Miranda* rights. Taylor seems to contend that his post-*Miranda* statement should have been suppressed. For the reasons already discussed, any error in the admission of Taylor's post-*Miranda* confirmation of his phone number was also harmless.