STATE of Indiana, Appellant–Plaintiff,

v.

**Ruth A. HICKS, Appellee–Defendant.**

No. 41A05–0708–CR–482.

Court of Appeals of Indiana.

March 12, 2008.

Steve Carter, Indiana Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

George Hoffman, III, Hoffman, Admire & Newcomb, Franklin, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issues

The State of Indiana appeals the trial court's grant of Ruth Hicks's motion to suppress evidence against her. The State raises the sole issue of whether the trial court improperly suppressed the evidence. Concluding the trial court's grant of the motion to suppress was contrary to law, we reverse and remand for further proceedings.

### Facts and Procedural History

On August 2, 2005, at roughly 2:45 a.m., Officer Kevin Sherman, of the Franklin Police Department, was dispatched based on the report of a vehicle stopped on railroad tracks. When Officer Sherman ar-

rived on the scene, he observed a group of people standing roughly fifteen feet from the truck, which was unoccupied and stopped on the railroad tracks. Officer Sherman spoke with Christina Shinn and three other individuals, who stated that they did not know who had been driving the truck, and were outside to help get the truck off the tracks. During this conversation, Hicks pointed at Shinn and stated that Shinn had been driving the truck. Officer Sherman, who was standing within a few feet of Hicks, smelled alcohol and noticed that Hicks had bloodshot eyes, slurred speech, and unsteady balance.

Officer Sherman then asked Hicks a series of questions, as indicated by the following statement, which Officer Sherman confirmed to be accurate at the hearing:

and once again [Hicks] said she wasn't driving and then [Officer Sherman] asked her who the vehicle belonged to. She told [Officer Sherman] it was Kenny Wilkins. Then [Officer Sherman] asked her again who was driving and she pointed to Christina Shinn and said "The girl with the blond hair." And then [Officer Sherman] asked her what her name was and she said she didn't know. Then [Officer Sherman] asked her again if she was driving and she said that ["]we["] were driving the vehicle. And the [Officer Sherman] asked her who ["]we["] was, and she said "Okay, the girl with the blonde hair." And then [Officer Sherman] asked her again if she drove the vehicle. And then finally she admitted that she did.

Transcript at 7. Officer Sherman then conducted field sobriety tests, all of which Hicks failed.

On August 15, 2005, the State charged Hicks with operating a vehicle with a blood alcohol content of more than .15 percent, a Class A misdemeanor, and operating a vehicle while intoxicated, a Class A misdemeanor. At some point, Hicks filed a motion to suppress the statements she made to Officer Sherman, arguing that they were made in violation of her rights under *Miranda*. On July 25, 2007, the trial court held a hearing on this motion and granted the motion. At the hearing, the trial court made the following statement revealing its reasoning:

There are times when the law can be murky and I understand in this situation clearly the officer's first intent was the safety of the situation, as it should have been. At a certain point it did become a criminal investigation and that occurred before those questions were asked. Ms. Hicks couldn't have walked away and it was probably clear to her and probably clear to the officer that she couldn't walk away. So, I have to suppress the statement.

Tr. at 20–21. The State now appeals.[1]

## Discussion and Decision

### I. Standard of Review

When reviewing a trial court's ruling on a motion to suppress, we must determine whether substantial evidence of probative value supports the trial court's decision. *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006). Where a trial court granted a motion to suppress, the State appeals from a negative judgment and must show that the trial court's grant of the motion was contrary to law. *State v. Carlson*, 762 N.E.2d 121, 125 (Ind.Ct.App.2002). We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion oppo-

---

**1.** The State is permitted to appeal "an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution." Ind.Code § 35–38–4–2(5).

site that of the trial court. *Id.* We will not reweigh the evidence or judge witnesses' credibility, and will consider only the evidence most favorable to the trial court's ruling. *State v. Friedel,* 714 N.E.2d 1231, 1235 (Ind.Ct.App.1999).

## II. Trial Court's Grant of Motion to Suppress

■■■ A person must be informed of the right to remain silent and to an attorney, and that what he says may be used against him any time "law enforcement officers question a person who has been 'taken into custody or otherwise deprived of his freedom of action in any significant way.' "[2] *Luna v. State,* 788 N.E.2d 832, 833 (Ind.2003) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Statements given in violation of *Miranda* are normally inadmissible in a criminal trial. *Morris v. State,* 871 N.E.2d 1011, 1016 (Ind.Ct.App. 2007), *trans. denied.* "*Miranda* warnings do not need to be given when the person questioned has not been placed in custody." *Johansen v. State,* 499 N.E.2d 1128, 1130 (Ind.1986). In determining whether a person was in custody or deprived of freedom such that *Miranda* warnings are required, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Luna,* 788 N.E.2d at 833 (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)). We will make this determination "by examining whether a reasonable person in similar circumstances would believe he is not free to leave." *Id.; see also King v. State,* 844 N.E.2d 92, 96–97 (Ind.Ct.App.2005) ("The test is how a reasonable person in the suspect's shoes would understand the situation."). We will examine all the circumstances surrounding an interrogation, and are concerned with "objective circumstances, not upon the subjective views of the interrogating officers or the subject being questioned." *Gauvin v. State,* 878 N.E.2d 515, 520 (Ind.Ct.App.2007). In order to conclude that the defendant was indeed seized at the time of the statement, we must find that the officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Jones v. State,* 866 N.E.2d 339, 342–43 (Ind.Ct.App.2007), *trans. denied.*

■■■ Hicks points to Officer Sherman's testimony that had Hicks attempted to leave after he asked her who had been driving the truck, he would not have allowed her to do so. However, "[a]n officer's knowledge and beliefs are relevant to the question of custody only if they are conveyed—through words or actions—to the person being questioned." *Morris,* 871 N.E.2d at 1016; *see also United States v. Kelly,* 991 F.2d 1308, 1313 (7th Cir.1993) (holding defendant was not in custody where, "[a]lthough the officer decided to arrest [the defendant] the moment he stepped out of his car, he never informed [the defendant] of this decision"); *Payne*

---

**2.** We note that "a defendant is entitled to the procedural safeguards of *Miranda* only if subject to custodial *interrogation*." *Lawson v. State,* 803 N.E.2d 237, 239 (Ind.Ct.App.2004) (emphasis added), *trans. denied.* " 'Interrogation' is defined as 'express questioning and words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response form the suspect.' " *Id.* (quoting *White v. State,* 772 N.E.2d 408, 412 (Ind.2002)). As the State has not argued that Officer Sherman's questions were not "interrogation," instead of "general investigatory questioning," *see Deckard v. State,* 670 N.E.2d 1, 5 (Ind.1996), we will assume for purposes of this decision that Officer Sherman's questions constituted "interrogation." However, we render no opinion as to whether these questions actually rose to the level of "interrogation" for the purposes of *Miranda.*

*v. State,* 854 N.E.2d 7, 13 (Ind.Ct.App. 2006) ("[A] police officer's unarticulated plan has no bearing on the question of custody."). We also note that Officer Sherman testified that Hicks was not under arrest or in his custody when she stated that she had been driving the truck. Such a statement is also largely irrelevant, as the record does not indicate that Officer Sherman actually told Hicks that she was not under arrest. *Cf. Luna,* 788 N.E.2d at 834 (recognizing that the defendant was told repeatedly that he was not under arrest).

Hicks also makes much of the facts that Officer Sherman suspected that Hicks had committed the crime of driving while intoxicated, and therefore focused his questions on her. In support, Hicks cites *Moore v. State,* 723 N.E.2d 442, 450–51 (Ind.Ct.App.2000), in which this court held that a juvenile defendant was not subject to custodial interrogation when he was placed in the back of a police car following an incident where the juvenile had driven his vehicle into another individual after the two had fought. Although the court held that the juvenile's statements were not given during custodial interrogation, the court stated that once the officers realize they are investigating a crime, instead of an accident, they should read a defendant his *Miranda* rights. However, this statement was made in the context of a situation where officers arrive on what they believe to be an accident scene, detain a person involved in the accident, and then learn facts that lead officers to believe that the accident was actually an assault or attempted murder. *Id.* at 450 (recognizing that the defendant was not free to leave the scene). Indeed, our supreme court has consistently stated that questioning an individual the police suspect of a crime does not inherently render the questioning custodial interrogation requiring *Miranda* warnings. *See Luna,* 788 N.E.2d at 834 ("Nor is the requirement of warnings to be imposed simply because ... the questioned person is one whom the police suspect.") (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)); *Cliver v. State,* 666 N.E.2d 59, 66 (1996); *see also Beckwith v. United States,* 425 U.S. 341, 346–47, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) ("It was the compulsive aspect of custodial interrogation, and not the strength of or content of the government's suspicions at the time the questioning was conducted, which led the Court to impose the Miranda requirements with regard to custodial questioning" (quoting *United States v. Caiello,* 420 F.2d 471, 473 (2d Cir.1969), *cert. denied,* 397 U.S. 1039, 90 S.Ct. 1358, 25 L.Ed.2d 650 (1970))).

Hicks points to nothing in the nature of the encounter that indicates the questioning "was conducted under circumstances of intimidation." *Zook v. State,* 513 N.E.2d 1217, 1221 (Ind.1987) (recognizing that "the requirements of *Miranda* do not apply beyond coercive custodial interrogation"). Indeed, Officer Sherman in no way restrained Hicks's movement or used other coercive tactics, and merely asked her who had been driving the vehicle. Importantly, this questioning took place in a public setting, in front of other individuals. *See Yarborough v. Alvarado,* 541 U.S. 652, 675–76, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (recognizing that in determining whether *Miranda* warnings were required, an important circumstance is whether the questioning took place in public or at the police station); *United States v. Murray,* 89 F.3d 459, 462 (7th Cir.1996) (recognizing that the defendant was questioned "on a lighted street in an urban area in public view").

Although Indiana authority is sufficient to reverse the trial court here, we note that courts in other jurisdictions have addressed factual situations substantially similar to the one at bar and found that the defendants were not subject to custodi-

al interrogation when officers questioned them as to who was driving a vehicle. *See State v. Castellano,* 162 Ariz. 461, 784 P.2d 287, 289 (App.1989) (holding *Miranda* warnings were not required where officers questioned two individuals on a public highway regarding who owned the vehicle, who had been driving the vehicle, and who owned the beer in the vehicle); *Conboy v. State,* 155 Md.App. 353, 843 A.2d 216, 227–28 (2002) (holding defendant was not in custody where defendant arrived at the scene of an abandoned one-car accident and officer questioned him as to his identity and then instructed him to sit on the ground while the officer investigated whether defendant had been the driver); *State v. Greyeyes,* 105 N.M. 549, 734 P.2d 789, 791 (App.1987) (holding defendant was not in custody when officer came upon two men standing outside of a damaged truck, asked one who had been driving, and after noticing the smell of alcohol, asked him if he had been drinking), *cert. denied; State v. Stevenson,* 958 S.W.2d 824, 825 (Tex. Crim.App.1997) (holding husband was not subject to custodial interrogation where officer approached couple who had been involved in a one-car accident, asked who had been driving, and after noticing that wife had injuries consistent with being the passenger, asked husband again who had been driving); *State v. Gruen,* 218 Wis.2d 581, 582 N.W.2d 728, 734 (App.1998) (holding defendant was not subject to custodial interrogation where he was briefly detained and asked only three general questions, including "who was driving?"), *review denied.*

Also, we point out that the encounter in this case was substantially similar to a traffic stop. In *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Court concluded that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda.*" Although the Court recognized that the defendant had been seized, it noted the brief nature of such stops, and that such stops "commonly occur in the 'public view,' in an atmosphere far 'less "police dominated" than that surrounding the kinds of interrogation at issue in *Miranda* itself.'" *Pennsylvania v. Bruder,* 488 U.S. 9, 10, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988) (per curiam) (quoting *Berkemer,* 468 U.S. at 438–39, 104 S.Ct. 3138). In *Bruder,* the Court relied on *Berkemer* in holding that police officers were not required to give *Miranda* warnings where an officer "ask[ed] respondent a modest number of questions and request[ed] him to perform a simple balancing test at a location visible to passing motorists." *Id.* at 11, 109 S.Ct. 205 (quoting *Berkemer,* 468 U.S. at 442, 104 S.Ct. 3138). As police are allowed to ask questions and request sobriety tests of motorists whom they pull over, we see no reason why Officer Sherman could not act similarly when he encountered Hicks in the immediate vicinity of a disabled vehicle.

We conclude that all the reasonable inferences from the evidence indicate that Hicks was not in custody when she told Officer Sherman that she had been driving the vehicle. Therefore, the trial court's grant of Hicks's motion to suppress that statement was contrary to law.

### Conclusion

We conclude the trial court's grant of the motion to suppress was clearly erroneous. We therefore reverse and remand for further proceedings.

Reversed and remanded.

FRIEDLANDER, J., and MATHIAS, J., concur.