**FILED**

Mar 17 2020, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Marc Lopez
The Marc Lopez Law Firm
Indianapolis, Indiana

Matthew Kroes
Zac Bailey
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General

Stephen Creason
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jackelin Andrea Ramirez-Vera, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 17, 2020 <br><br> Court of Appeals Case No. <br> 19A-CR-1368 <br><br> Appeal from the Jennings Superior Court <br><br> The Honorable Gary L. Smith, Judge <br><br> Trial Court Cause No. <br> 40D01-1810-CM-517 |

**Najam, Judge.**

# Statement of the Case

Jackelin Andrea Ramirez-Vera[1] appeals her conviction for operating a vehicle with an alcohol concentration equivalent to at least 0.15 gram of alcohol per 100 milliliters of blood, as a Class A misdemeanor, following a bench trial. Ramirez presents three issues for our review, which we revise and restate as follows:

> 1.  Whether the State presented sufficient evidence to demonstrate that she was operating a vehicle when officers found her intoxicated in her parked car.
>
> 2.  Whether the State laid an adequate foundation for the admission of a chemical blood test.
>
> 3.  Whether the trial court erred when it admitted into evidence her pre-*Miranda* statements.

We affirm.

# Facts and Procedural History[2]

On the evening of August 12, 2017, Amanda Matern went to a bar. While at the bar, Matern met Ramirez, and the two "wound up leaving together" in Ramirez' vehicle. Tr. at 9. Ramirez drove her car that night, and she drove the

---

[1] At the beginning of her bench trial, Ramirez-Vera indicated that her preferred name is Ramirez. *See* Tr. at 5. Accordingly, we will refer to her as Ramirez throughout this opinion.

[2] We held oral argument in this case on March 3, 2020, at Wabash College in Crawfordsville. We thank counsel for their excellent advocacy and extend our appreciation to the administration, faculty, staff, and students of Wabash College for their hospitality.

"entire time." *Id.* at 11. Sometime between 9:00 and 10:00 p.m., Nick Templeton observed Ramirez' car "on the travel portion of the road" at "a stop sign" of a county road "getting ready to turn" onto Indiana State Road 3. *Id.* at 16, 17. Ramirez' vehicle was running and the brake lights were on, but the headlights were off. As Templeton approached the vehicle, he saw people in the car who appeared to be "passed out." *Id.* at 17. Templeton also noticed that an individual in the car had her right "leg hiked up and the left leg was down . . . on the brake[.]" *Id.* Templeton called 9-1-1.

[4] Deputy Garrett Hoppock with the Jennings County Sheriff's Office responded to the call and arrived at the intersection at 10:53 p.m. When Deputy Hoppock arrived, he observed Ramirez' vehicle to be on the county road "just west of State Road 3." *Id.* at 21. Deputy Hoppock noticed that Ramirez' vehicle was running but that the headlights were off. Deputy Hoppock then saw a broken beer bottle on the ground near the driver's side door.

[5] As Deputy Hoppock approached the vehicle, he initially did not see anyone inside. However, as he got closer, he observed two females in "the front passenger seat," which had been "laid back," and no one in the driver's seat. *Id.* at 27. Deputy Hoppock then saw a pair of shoes and a pair of pants on the floor in front of the driver's seat, and he noticed that Ramirez was "in a state of undress" on top of Matern in the front passenger seat. *Id.* Deputy Hoppock also observed an empty six-pack of beer in the back seat that was the same brand as the bottle he had found on the ground.

[6] Deputy Hoppock knocked on the passenger's side window and woke Ramirez and Matern up. Once they were awake, Ramirez "crawled over" to the driver's seat and put her pants and shoes on. *Id*. at 29. She then opened the window, and Deputy Hoppock detected an odor of an "alcoholic beverage" emitting from the vehicle. *Id*. at 30. When Deputy Hoppock asked Ramirez questions, her answers were "pretty short." *Id*. And Deputy Hoppock noticed that Ramirez "fumbled" with her identification card. *Id*.

[7] Ramirez then exited the car. However, she had to "grab on to the door and pull herself from the vehicle," which is an action Deputy Hoppock "[n]ormally" sees in "somebody that is impaired." *Id*. at 31. At that point, Deputy Hoppock administered a series of field sobriety tests to Ramirez. Ramirez agreed to take two of the tests. The results of the horizontal gaze nystagmus test demonstrated that Ramirez was "impaired." *Id*. at 39. And the results of the vertical gaze nystagmus test indicated that there was "a high dose of alcohol" present in her system. *Id*. at 41. Deputy Hoppock asked Ramirez to perform two additional field sobriety tests, but she "refused." *Id*.

[8] Deputy Hoppock read Ramirez the implied consent advisement, and Ramirez agreed to take a certified blood test. At that point, Deputy Hoppock transported Ramirez to a hospital. Once at the hospital, Virgil Mullikin drew Ramirez' blood at 12:25 a.m. on August 13. The results of that test demonstrated that Ramirez had a blood alcohol concentration of 0.229 gram of alcohol per 100 milliliters of blood.

[9] The State charged Ramirez with one count of operating a vehicle with an alcohol concentration equivalent to at least 0.15 gram of alcohol per 100 milliliters of blood, as a Class A misdemeanor (Count I); one count of operating a vehicle while intoxicated, as a Class C misdemeanor (Count II); and one count of operating a motor vehicle without ever receiving a license, as a Class C misdemeanor (Count III).

[10] The trial court held a bench trial on May 23, 2019. At the start of the bench trial, the State moved to dismiss Count III, which motion the trial court granted. The State then called Deputy Hoppock. Deputy Hoppock testified that Ramirez had told him "that she was driving earlier." *Id.* at 31. At that point, Ramirez objected to the admission of her statements to Deputy Hoppock because those statements were made before Deputy Hoppock advised her of her *Miranda* rights. The trial court determined that Deputy Hoppock was "entitled" to ask Ramirez questions at that stage of his investigation and overruled her objection. *Id.* at 34. Deputy Hoppock then testified that Ramirez told him that she had been driving "earlier," but that she had "drank too much, so she pulled over to sleep it off." *Id.* at 35.

[11] The State then called Mullikin as a witness. Mullikin testified that, when he drew Ramirez' blood, he followed a specific protocol. He then testified that the protocol he had followed was "approved by all who reviewed it," and that "usually" one of the people who reviews it is a physician. *Id.* at 53. And he testified that the pathologist, who is a physician, reviews "all policies" that go into place. *Id.* at 54.

[12] Ramirez objected to any evidence of Ramirez' blood draw on the ground that the State had failed to lay an adequate foundation, namely, that the State had failed to establish that the protocol followed by Mullikin had been approved by a physician. The State responded and asserted that evidence of the blood draw was admissible because Mullikin testified that a pathologist, a physician, had reviewed the policy. The trial court overruled Ramirez' motion.

[13] Cheryl Anderson, a forensic scientist with the Indiana Department of Toxicology, then testified about the results of Ramirez' blood test. During Anderson's testimony, the State moved to admit the results of that test. Ramirez stated that she had "[n]o objections" to the admission of that evidence. *Id*. at 71. The court admitted the results of the blood test, which showed that Ramirez' blood alcohol content was 0.229 gram per 100 milliliters of blood.

[14] At the conclusion of the bench trial, the court found Ramirez guilty of Counts I and II. The court then vacated Count II and sentenced her to 365 days on Count I, with all but time served suspended to probation. This appeal ensued.

## Discussion and Decision

### *Issue One: Sufficiency of the Evidence*

[15] Ramirez first asserts that the State failed to present sufficient evidence to

support her conviction on Count I.[3]  Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict.  *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).  We do not assess the credibility of witnesses or reweigh the evidence.  We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.  *Id*.

*Love v. State*, 73 N.E.3d 693. 696 (Ind. 2017).

[16]  In order to convict Ramirez, the State was required to prove that she had operated a vehicle with an alcohol concentration equivalent to at least 0.15 gram of alcohol per 100 milliliters of blood.  Ind. Code § 9-30-5-1(b) (2019). Further, Indiana Code Section 9-30-6-15 provides:

> At any proceeding concerning an offense under IC 9-30-5 . . . , evidence of the alcohol concentration that was in the blood of the person charged with the offense:
>
> > (1) at the time of the alleged violation; or

---

[3]  In her reply brief, Ramirez purports to challenge her conviction on Count II.  Specifically, she asserts that, if she "were to succeed on her appeal and have her conviction on Count I reversed, her conviction on Count II would remain."  Reply Br. at 9.  As we affirm her conviction on Count I, we need not address her argument on Count II.

> (2) within the time allowed for testing under section 2 of this chapter;
>
> as shown by an analysis of the person's breath, blood, urine, or other bodily substance is admissible.

I.C. § 9-30-6-15(a). Section 2 provides that a chemical blood test "must be administered within three (3) hours after the law enforcement officer had probable cause to believe the person committed an offense under IC 9-30-5[.]" I.C. § 9-30-6-2(c). And, if the evidence establishes that a chemical test was taken "within the period allowed for testing under section two" and that the person had an illegal blood alcohol concentration, the trier of fact "shall presume" that the person had an illegal alcohol concentration at the time the person operated the vehicle. I.C. § 9-30-6-15(b). However, that presumption is rebuttable. *Id.*

[17] On appeal, Ramirez argues that the State could only rely on the presumption that she had operated her vehicle with an alcohol concentration equivalent to more than 0.15 if it could prove that she had operated her vehicle at some point after 9:25 p.m., three hours before the blood test at 12:25 a.m., which she contends the State failed to do. Specifically, she asserts that the evidence demonstrates that she had stopped operating her car sometime before Templeton found her, which was as early as 9:00 p.m. We cannot agree.

[18] In *Mordacq v. State*, 585 N.E.2d 22 (Ind. Ct. App. 1992), we considered whether a defendant had been operating a vehicle when officers found her asleep in her

car, which was parked on the street with its engine running. *Id*. at 23. On appeal, this Court explained:

> [D]efendants have been held to be operating the vehicle, when found at the wheel of a car with its engine running: on the median strip of a four-lane highway; stopped at an intersection, asleep; stuck in a snowbank on the median of an interstate highway; and, stopped in a lane of traffic on a county road, asleep.

*Id*. (citations omitted). However, because "[t]here was no evidence that [the defendant's] car was stopped in the travel portion of the roadway," this Court held that the State had failed to show that the defendant was operating her vehicle when officers found her. *Id.*

[19] Then, in *Winters v. State*, 132 N.E.3d 46 (Ind. Ct. App. 2019), this Court again considered whether a defendant was operating a vehicle when officers found the defendant asleep in a running vehicle. *Id*. at 47. In that case, the Court noted that "[u]nlike *Mordacq*," the defendant's vehicle was in the travel portion of the roadway. *Id*. at 50. Based on that fact, this Court held that the defendant was operating his vehicle at the time officers found him. *Id*. at 51.

[20] In the present case, like in both *Mordacq* and *Winters,* Deputy Hoppock found Ramirez asleep in her vehicle with its engine running. But, as in *Winters* and unlike in *Mordacq*, Ramirez' vehicle was in the roadway. Indeed, Templeton testified that he observed Ramirez' vehicle "in the travel portion of the road" at a stop sign facing a state highway. Tr. at 17. Further, while she was in the passenger seat when Deputy Hoppock arrived, Ramirez does not dispute that

she was the only person to drive the vehicle that night, which was confirmed when Matern testified that Ramirez drove the "entire time." *Id*. at 11. And, while the evidence demonstrates that she may have parked her car as early as 9:00 p.m. and that the car was in the same location when Deputy Hoppock responded to the 9-1-1 call, "'the State does not have to prove movement of the car.'" *Winters*, 132 N.E.3d at 49 (quoting *Mordacq*, 585 N.E.2d at 24). Based on the fact that Ramirez was the only person to have driven the car that night and the fact that the vehicle was stopped on the travel portion of the road with its engine running when Deputy Hoppock arrived on the scene at 10:53 p.m., the State presented sufficient evidence to show that Ramirez was operating her vehicle at that time.

[21] The crux of Ramirez' argument on appeal is that the State failed to present evidence that the blood test was administered within three hours of her operating the vehicle and, as a result, the State could not rely on the presumption that her blood alcohol level was at least 0.15 at the time she operated the car. But, again, the State did present sufficient evidence from which a reasonable fact-finder could conclude that Ramirez was operating her vehicle when Deputy Hoppock arrived at her location at 10:53 p.m. Accordingly, the blood test, which was administered less than three hours later at 12:25 a.m., was timely conducted within three hours after Deputy Hoppock had probable cause to believe that she had committed an offense, and, as such, the State presented sufficient evidence to support her conviction.

## *Issue Two: Whether the State Laid an Adequate Foundation for the Admission of the Blood Test*

[22] Ramirez next contends that the court abused its discretion when it admitted the results of her blood test as evidence. As our Supreme Court has stated:

> Generally, a trial court's ruling on the admission of evidence is accorded a great deal of deference on appeal. Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and only reverse if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.

*Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015).

[23] Ramirez contends that the trial court abused its discretion when it admitted the results of the blood test as evidence because the State was unable to prove that Mullikin had performed the blood draw pursuant to a protocol approved by a physician, which Ramirez contends was a "foundational requirement" for the admission of that evidence. Appellant's Br. at 18. To support her assertion, Ramirez relies on Indiana Code Section 9-30-6-6(a), which provides that blood samples collected at the request of a law enforcement officer as part of a criminal investigation must be obtained by a physician or "a person trained in . . . obtaining bodily substance samples and acting under the direction of *or under a protocol prepared by a physician*[.]" (Emphasis added.)

[24] However, Ramirez failed to preserve this issue for our review. It is well settled that a contemporaneous objection at the time the evidence is introduced at trial

is required to preserve the issue for appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors. *Id.*

[25] Here, when the State questioned Mullikin about the protocol he had followed to obtain the blood sample, Ramirez objected to any evidence related to the blood test on the ground that the State had not provided an adequate foundation to support the admission of that evidence, which objection the trial court overruled. However, when the State later moved to admit the results of Ramirez' blood test during Anderson's testimony, Ramirez explicitly stated that she had "[n]o objections" to the admission of that evidence. Tr. at 71. Because Ramirez did not object at the time the challenged evidence was introduced at trial, she has failed to preserve this issue for our review.[4]

### *Issue Three: Pre-Miranda Statements*

[26] Finally, Ramirez asserts that the trial court abused its discretion when it admitted her pre-*Miranda* statements as evidence. As stated above, a trial court's ruling on the admission of evidence is accorded a great deal of deference. *Hall*, 36 N.E.3d at 466. Accordingly, we will only reverse a trial

---

[4] Wavier notwithstanding, Ramirez' argument on this issue must fail. As discussed above, a trial court's ruling on the admission of evidence is reviewed for an abuse of discretion. *See Hall*, 36 N.E.3d at 466. Here, Mullikin testified that the protocol he followed when he drew Ramirez' blood was "approved by all who reviewed it[.]" Tr. at 53. And he testified that a pathologist, who is a physician, reviews "all policies" that go into place. *Id.* at 54. Further, Mullikin drew Ramirez' blood at St. Vincent hospital. That evidence supports an inference that a physician had approved the protocol Mulliken followed. Accordingly, the trial court did not abuse its discretion when it admitted the results of the blood test as evidence.

court's ruling if it is clearly against the logic and effect of the facts and circumstances and the error affects Ramirez' substantial rights. *See id.*

[27] This Court has recently stated:

> In *Miranda v. Arizona*, 384 U.S. 436, 44, 86 S.Ct. 1602, 1612, 16 L.E.2d 694 (1966), the United States Supreme Court held that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Prior to any custodial interrogation, "the person must be warned that [s]he had a right to remain silent, that any statement [s]he does make may be used as evidence against h[er], and that [s]he has a right to the presence of an attorney, either retained or appointed." *Id.* Statements elicited in violation of *Miranda* generally are inadmissible in a criminal trial. *Loving v. State*, 647 N.E.2d 1123, 1125 (Ind. 1995).

*Hudson v. State*, 129 N.E.3d 220, 224 (Ind. Ct. App. 2019). "A law enforcement officer's duty to give *Miranda* warnings does not attach unless there has been such a restriction on the person's freedom as to render him in custody." *Corbin v. State*, 113 N.E.3d 755, 760 (Ind. Ct. App. 2018).

[28] On appeal, Ramirez contends that her statements to Deputy Hoppock, which she made prior to receiving a *Miranda* warning, were inadmissible at trial. In particular, Ramirez told Deputy Hoppock that she had driven earlier in the evening but that she had had too much to drink so she pulled over to sleep. Ramirez asserts that an officer is required to give *Miranda* warnings "'at the moment during the investigation of an accident that an officer knows or should

know that the investigation is contemplating a crime[.]'" Appellant's Br. at 20 (quoting *Moore v. State*, 723 N.E.2d 442, 450 (Ind. Ct. App. 2000)). And Ramirez asserts that Deputy Hoppock "immediately found circumstantial evidence" that a crime had been committed. *Id*. at 21. Accordingly, Ramirez asserts that Deputy Hoppock was required to advise her of her *Miranda* rights, and she maintains that any statements she made prior to that advisement were inadmissible.

[29] This Court addressed a similar issue in *State v. Hicks*, 882 N.E.2d 238 (Ind. Ct. App. 2008). In that case, an officer responded to a report of a vehicle stopped on railroad tracks. *Id*. at 239. When the officer arrived, he spoke with several individuals who were at the scene, including the defendant. *Id*. at 240. During the conversation, the officer noticed that the defendant smelled of alcohol and showed signs of intoxication. *Id*. The officer then asked the defendant a series of questions about who owned the car and who had driven the car. *Id*. The defendant ultimately admitted that she had driven the car. *Id*. The officer then administered field sobriety tests, which the defendant failed. *Id*. Prior to her trial, the defendant filed a motion to suppress the statements she had made to the officer on the ground that she had made those statements in violation of her *Miranda* rights. *Id*. The trial court granted her motion. *Id*.

[30] On appeal, the defendant maintained that the officer was required to advise her of her *Miranda* rights because the officer suspected that she had committed the crime of driving while intoxicated. *Id*. at 242. This Court first noted that "our supreme court has consistently stated that questioning an individual the police

suspect of a crime does not inherently render the questioning custodial interrogation requiring *Miranda* warnings." *Id*. The Court further noted that the encounter was "substantially similar to a traffic stop" and stated:

> In *Berkemer v. McCarty*, 468 U.S. 420, 440. 140 S. Ct. 3138, 82 L.Ed.2d 317 (1984), the Court concluded that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." Although the Court recognized that the defendant had been seized, it noted the brief nature of such stops, and that such stops "commonly occur in the public view, in an atmosphere far "less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself." *Pennsylvania v. Bruder*, 488 U.S. 9, 10, 109 S. Ct. 205, 102 L.Ed.2d 172 (1988) (per curiam) (quoting *Berkemer*, 468 U.S. at 439-39, 104 S. Ct. 3138). In *Bruder*, the Court relied on *Berkemer* in holding that police officers were not required to give *Miranda* warnings where an officer "ask[ed] respondent a modest number of questions and request[ed] him to perform a simple balancing test at a location visible to passing motorists." *Id*. at 11.

*Id*. at 243 (alterations in original). This Court concluded that, because "police are allowed to ask questions and request sobriety tests of motorists whom they pull over, we see no reason why [the officer] could not act similarly when he encountered [the defendant] in the immediate vicinity of a disabled vehicle." *Id*. Accordingly, this Court held that the defendant was not in custody when she told the officer that she had been driving the vehicle.

[31] Similarly, here, Deputy Hoppock responded to a report of a vehicle stopped in the roadway. When Deputy Hoppock arrived, he noticed Ramirez in her vehicle. He then spoke with Ramirez and noticed signs of intoxication. At that

point, Deputy Hoppock asked Ramirez questions, and Ramirez responded that she had driven the car earlier in the evening but that she had pulled over because she had had too much to drink. As in *Hicks*, that encounter was substantially equivalent to a traffic stop during which police are allowed to ask questions and request sobriety tests. Accordingly, we see no reason why Deputy Hoppock could not act similarly when he encountered Ramirez in her stopped vehicle. We therefore hold that Ramirez was not in custody when she made her statements to Deputy Hoppock, and, as such, the trial court did not err when it admitted those statements as evidence.

## Conclusion

[32]     In sum, the State presented sufficient evidence to prove that Ramirez was operating her vehicle when officers arrived at her location at 10:53 p.m. and, as such, that the blood test was timely administered less than three hours after Deputy Hoppock had probable cause to believe she had committed an offense. Accordingly, the State was entitled to rely on the presumption that she had operated her vehicle with an alcohol concentration equivalent to at least 0.15 gram of alcohol per 100 milliliters of blood. Further, Ramirez did not preserve for our review her claim that the trial court abused its discretion when it admitted the results of the blood test. And the trial court did not err when it admitted Ramirez' pre-*Miranda* statements as evidence because Ramirez was not in custody at that time. We therefore affirm her conviction.

[33]     Affirmed.

May, J., and Altice, J., concur.